**LOCAL NO. 381, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Appellant,**

v.

**TOSCO CORPORATION, Appellee.**

No. 86–2053.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1987.

Decided July 15, 1987.

Melva Harmon, Little Rock, Ark., for appellant.

Bruce R. Lindsey, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, WOLLMAN, Circuit Judge, and BOGUE,* Senior District Judge.

LAY, Chief Judge.

Local No. 381 of the International Union of Operating Engineers, AFL–CIO (Local 381) brought this action against Tosco Corporation (Tosco) to compel arbitration of two grievances. *See* 29 U.S.C. § 185(a) (1982) (allowing suits for violation of labor

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

agreements). The district court[1] found that neither grievance was arbitrable and entered judgment for Tosco. Local No. 381 appeals. For the reasons stated below, we reverse and remand with directions that both grievances should be submitted to arbitration.

## Background

Tosco and Local 381 entered into a new collective bargaining agreement on June 6, 1984. Article VII of the agreement provided that "[a]ny grievance or dispute arising out of the application of this agreement shall be governed in * * * manner of settlement by the terms of this agreement."[2] The terms of the agreement included an arbitration process.[3] The only exclusionary language in the contract stated as follows:

It is provided, however, that no grievance as to wages that shall be paid to all or any group of employees in the bargaining unit, or as to wages to be paid to any one of them shall be submitted to an arbitration board or to an arbiter, in any event. The question as to whether a person is being paid the rate which he is entitled to be paid in accordance with the wages set forth in Exhibit B for the work which he performed shall be a subject for arbitration.

The two grievances at hand arose out of Tosco's sale of its El Dorado, Arkansas, oil refinery to Lion Oil Company (Lion Oil), effective May 1, 1985. Before the sale, Tosco notified its employees, who were represented by Local 381, that they would lose their jobs when ownership of the plant changed. In fact, a term of the sale contract between Tosco and Lion Oil was that Lion Oil would not assume the collective bargaining agreement with Local 381.[4] Local 381 filed its two grievances before the sale to Lion Oil was consummated.

The first grievance sought to force Tosco to require, through the sale contract, that Lion Oil honor the collective bargaining agreement in force at the time of sale. Local 381 based this grievance on the following "successors" language in the agreement's preamble: "This agreement made and entered into by and between Tosco corporation *and its successors,* hereinafter referred to as the Company * * *." (Emphasis added).

The second grievance alleged that Tosco violated the contract by not providing severance pay to all union employees, even those hired by Lion Oil, when the company was sold. A severance pay provision in the contract stated: "An employee who has been continuously employed by the company for [various periods] shall, if *laid off* through no fault of his own, receive [various amounts]." (Emphasis added). The former Tosco employees hired by Lion Oil did not receive severance pay.

The district court refused to compel arbitration on these issues because the court found neither to be a "dispute arising out of application of [the] agreement," as specified in the arbitration clause. In effect, the district court found that, as a matter of law, the contract provisions cited did not support the union's allegations. The court specifically found that the "successors" language in the preamble could not bind a third party (Lion Oil) to the collective bargaining agreement. As to the severance

---

1. The Honorable Oren Harris, United States District Judge for the Western District of Arkansas, presiding.

2. The company asserts that this agreement to arbitrate is more narrow than those which say, for example, "any grievance arising out of the interpretation or meaning of the contract." We fail to see any significant difference between that wording and the language used by the parties here. The terms of the contract govern the extent of arbitration. Any dispute that involves the application of the contract provisions must necessarily require an interpretation of the contract.

3. Unions like Local 381 bargain for such arbitration procedures at the expense of giving up the right to strike. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957).

4. Lion Oil, however, was given the option of hiring any or all Tosco employees, and all but sixteen of the former Tosco workers were retained by Lion Oil without lapse (but with substantially reduced benefits). *See infra* footnote 5.

pay issue, the court found that the workers were never "laid off," so the contract provision was inapplicable.

## Discussion

### 1. The "Successors" Clause

 In holding that the first grievance did not arise out of the application of the agreement, the trial court reasoned that Lion Oil, as a matter of law, was not obligated to accept the bargaining contract of Tosco. The court cited *NLRB v. Burns Int'l Security Servs., Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) (successor need not honor collective bargaining agreement). *See also Fall River Dyeing & Finishing Corp. v. NLRB*, —— U.S. ——, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987) (under *Burns*, a successor must bargain in good faith with union if majority of workers were employed by predecessor company).

First, Tosco concedes that Lion Oil was a successor to Tosco's interest in the business operation. Also, the *Burns-Fall River* rule that a successor has no duty to assume a labor contract, as long as it is willing to enter into good faith bargaining over the terms and conditions of a new contract with the union, is not at issue here.

The question urged by Local 381, however, relates to the direct application of its contract with Tosco: Was Tosco obligated to condition the sale of its assets and business on its successor's affirmative agreement to honor the existing union contract? Whether this constitutes an obligation under the provisions of the bargaining agreement is not clear. Therefore, the union urges that this is the very kind of dispute that should be submitted to arbitration. We must agree.

Several cases have indicated that under similar contractual clauses, a selling company may well be obligated to sell only to a company promising to honor an existing collective bargaining agreement. *See Nursing Home & Hosp. Union No. 434 v. Sky Vue Terrace, Inc.*, 759 F.2d 1094, 1097

(3d Cir.1985) (compelling arbitration on whether company, under successors clause, must force buying company to accept collective bargaining agreement); *Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 285 (7th Cir.1981) (upholding status quo injunction pending arbitration on whether "successors" language in preamble binds selling company to require buyer to accept union contract); *Bressette v. International Talc Co.*, 527 F.2d 211, 214–16 (2d Cir.1975) (compelling arbitration; union cited "successors" language in preamble). The ruling of the trial court in effect decided the merits of the successor question. The only issue for the courts to decide, however, is whether there exists an arbitrable grievance arising out of the application of the contract. We find there clearly is.

### 2. Severance Pay

 All but sixteen Tosco workers were retained by Lion Oil. Local 381 complains that the employees carried over to Lion Oil nevertheless lost many of their fringe benefits,[5] thus implicating the severance pay provisions in the contract.

The district court in denying arbitration on this issue found that it was bound by *Acton v. Tosco Corp.*, No. 85–1140 (W.D. Ark. May 20, 1986) (holding that employees rehired without lapse were not "laid off"), *aff'd*, 815 F.2d 1161 (8th Cir.1986) (per curiam). The court also cited *Pabst Brewing Co. v. Anger*, 610 F.Supp. 214 (D.Minn. 1985), *aff'd*, 784 F.2d 338 (8th Cir.1986). *Acton* and *Pabst Brewing* involved interpretations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1982), and did not involve interpretation of union contracts. In the present case, the question is what the parties meant by the contractual phrase "laid off." This dispute arises out of the application of the contract and is one, in our judgment, requiring arbitration. In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers*

5. Local 381 alleges that among the benefits lost were a scheduled wage increase, pension plan, savings plan, certain health insurance benefits, vacation benefits, all accumulated seniority, and the benefits that flow from seniority such as protection from lay off when work is slack.

*Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court stated in pertinent part:

> As the parties' arguments demonstrate, both the Union's claim for severance pay and Nolde's refusal to pay the same are based on their differing perceptions of a provision of the expired collective bargaining agreement * * *. Of course, in determining the arbitrability of the dispute, the merits of the underlying claim for severance pay are not before us. However, it is clear that, whatever the outcome, the resolution of that claim hinges on the interpretation ultimately given the contract clause providing for severance pay.

*Id.* at 249, 97 S.Ct. at 1071. We find those observations equally applicable here.

The Supreme Court has recently reaffirmed the principles that guide our analysis of arbitrability questions. *See AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citing the "Steelworkers Trilogy," *United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

The *AT & T* Court observed:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1353); *see also Actors' Equity Ass'n v. American Dinner Theatre Inst.,* 802 F.2d 1038, 1044 (8th Cir.1986). Our duty under the Supreme Court's cases is clear; we must decide whether or not the parties agreed in their contract to submit the underlying disputes to arbitration. In doing so, we cannot consider the merits of the union's grievances.[6]

**Conclusion**

We are unable to conclude with positive assurance that the labor contract between Local 381 and Tosco does not provide for arbitration of disputes like the two presently at issue. The first grievance ostensibly is based on the word "successors" in the preamble to the agreement. Even if we regard as frivolous the union's contention that this single phrase could obligate Tosco to require Lion Oil to accept the contract, we cannot take the issue away from the arbitrator. *See AT & T,* 106 S.Ct. at 1419; *United Brick & Clay Workers v. A.P. Green Fire Brick Co.,* 343 F.2d 590, 594 (8th Cir.1965) (court's view of merits is immaterial in arbitrability decisions). Similarly, the second grievance cites the severance pay provisions of the contract, and centers on interpretation of the phrase "laid off." Again, the arbitrator—not this court—must decide the merits of this contract interpretation question.

For the reasons stated in this opinion, the judgment of the district court is reversed and remanded with instructions to enter an order compelling arbitration of the grievances brought against Tosco by Local 381. The union's request for attorney fees is denied.

---

6. [I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. *AT & T,* 106 S.Ct. at 1419; *accord United Brick & Clay Workers v. A.P. Green Fire Brick Co.,* 343 F.2d 590, 594 (8th Cir.1965).