# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3230

_____

| | | |
|---|---|---|
| Teamsters Local Union No. 688, affiliated with International Brotherhood of Teamsters, AFL-CIO, | * * * * * * | |
| | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Appellant, | * | District of Missouri. |
| | * | |
| v. | * | |
| | * | |
| Industrial Wire Products, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 11, 1999
Filed: July 7, 1999

_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Teamsters Local Union No. 688 (the union) brought this declaratory judgment action seeking to compel Industrial Wire Products, Inc. (the company) to arbitrate a grievance concerning the proper wage rates under a collective bargaining agreement. Both parties moved for summary judgment. The district court determined that the wage rate dispute is not subject to the arbitration clause of the agreement and accordingly, granted summary judgment to the company. The union appeals, and we reverse.

I.

The union is the collective bargaining representative for the production and maintenance workers employed by the company at its plant in Sullivan, Missouri. The present dispute involves the company's refusal, following negotiations in 1996, to continue paying a five cent per hour pay increase that the parties had negotiated in their 1994 collective bargaining agreement. A bit of background information is necessary to explain the present dispute.

In 1994, the union and the company negotiated a collective bargaining agreement that included a five cent per hour wage increase for all employees. The agreement also provided for a new incentive compensation program, through which employees could earn a bonus based upon plant productivity. An asterisked paragraph in the footnotes to the wage schedule explained, however, that the five cent hourly wage increase would be set off against any bonus earned through the new incentive program. In other words, employees would receive bonus compensation only to the extent any bonus earned exceeded the five cent per hour wage increase--employees were not allowed to accumulate both benefits simultaneously.

In 1996, the parties began negotiating a new collective bargaining agreement. The union first proposed eliminating the incentive compensation program, but the company wanted to retain the incentive program. At another negotiation meeting, the union proposed a 50 cent per hour wage increase for all employees, which the company rejected. Negotiations continued, and the company ultimately agreed to implement wage increases of 20 cents per hour the first year, 5 cents per hour the second year, and 10 cents per hour the third year. The company also proposed deleting the asterisked paragraph of the 1994 agreement, which explained the set off arrangement between the five cent wage increase and the bonus incentive program.

The company drafted the written collective bargaining agreement reflecting the parties' final proposals. Among other things, the draft included an arbitration clause and omitted the asterisked paragraph from the wage schedule that had been included in the 1994 contract. In the new draft, the company replaced the prior five cent increase described in that paragraph with the newly agreed upon wage increases. Thus, the new draft eliminated the previously agreed upon and implemented five cent per hour increase, which was in the 1994 agreement. The union objected to the draft, stating that it believed the parties agreed to eliminate only the set off arrangement, not the previously implemented five cent wage increase. The union refused to sign the 1996 collective bargaining agreement as drafted, asserting it did not reflect the actual agreement of the parties.

On August 13, 1996, an employee filed a grievance alleging that the company violated the collective bargaining agreement by altering the negotiated wage rate. Specifically, the employee complained, "The company has taken .05 from our wages." (Appellant's App. at A44.) The company refused to accept the grievance as valid under the collective bargaining agreement, which provides a grievance procedure including arbitration for all "differences" that arise between the parties "as to the meaning or application of the provisions of this Agreement." (Id. at A17.) On December 16, 1996, the union agreed to sign the 1996 written collective bargaining agreement as drafted by the company as long as the company provided written acknowledgment that the union did not thereby abandon its grievance. The company complied, but maintained its position that the grievance was not valid under the 1996 collective bargaining agreement.

The union brought suit in federal district court seeking a declaratory judgment to force the company to arbitrate the grievance. The parties filed cross motions for summary judgment. The district court concluded that although a valid arbitration agreement exists between the parties, the dispute at issue does not fall within the scope of that agreement. The union appeals.

## II.

We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and affirming if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); American Family Mut. Ins. Co. v. Van Gerpen, 151 F.3d 886, 887 (8th Cir. 1998). In this case, the material facts are undisputed, and our inquiry focuses on whether the district court correctly concluded as a matter of law that the dispute between the parties is not subject to arbitration.

Our consideration of this issue is guided by well established principles set forth in a series of cases that have become known as the Steelworkers Trilogy. See United Steelworkers of Am. v. American Mfg. Co., 363 U.S. 564 (1960); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). These cases articulate the following general principles: (1) arbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration; (2) unless the parties provide otherwise, courts decide the issue of whether the parties agreed to arbitrate; (3) courts cannot weigh the merits of the grievance in determining whether the claim is subject to arbitration; and (4) when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute. See AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 648-50 (1986). Because arbitration is a matter of contract and consent, see Warrior & Gulf, 363 U.S. at 582; Keymer v. Management Recruiters Int'l, Inc., 169 F.3d 501, 504 (1999), we first consider whether a valid agreement to arbitrate exists. If so, we next consider whether the present "dispute falls within the scope of the arbitration agreement." Keymer, 169 F.3d at 504. When deciding whether or not the parties agreed in their contract to submit the underlying disputes to arbitration, "we cannot consider the merits of the

4

union's grievances."  Local No. 381, Int'l Union of Operating Eng'rs, AFL-CIO v. Tosco Corp., 823 F.2d 265, 268 (8th Cir.1987).

In this case, the parties do not dispute the existence of a valid agreement to arbitrate.  Article VIII of the written 1996 collective bargaining agreement specifically provides for arbitration of disputes that concern "the meaning or application of the provisions of this Agreement."  (Appellant's App. at A17.)  The disagreement in this case concerns not the existence of the agreement to arbitrate, but the scope of that agreement.

When there exists an express agreement to arbitrate, there arises a presumption that the parties agreed to submit the dispute to arbitration unless there is clear intent "that the parties did not want to arbitrate a related matter."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995); see Warrior & Gulf, 363 U.S. at 581 ("Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement.")  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay, or a like defense to arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  This presumption, however, must operate with regard to the intent of the contracting parties since arbitration is a matter of consent.  See  Keymer, 169 F.3d at 504; see also Warrior & Gulf, 363 U.S. at 582 (noting "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

The district court concluded that the parties' dispute was not subject to arbitration because the five cent pay increase was not reflected at all in any provision of the written 1996 agreement.  The district court  reasoned, "The agreement simply makes no provision for the five cent raise claimed by plaintiff, and so a dispute over

that issue is not subject to arbitration." (Appellant's Adden. at 10.) Additionally, the court noted that any arbitrator's decision adding such a pay increase would be expressly contrary to section six of Article VIII, which states that the arbitration panel has "no authority to add to, revise, delete, or disregard any provision of the Labor Agreement." (Appellant's App. at A18.) Thus an award would not "draw[] its essence from the collective bargaining agreement." Enterprise Wheel & Car Corp., 363 U.S. at 597.

The union's grievance disputes the accuracy of the wage rates being paid, and the union argues that the written agreement as drafted by the company does not accurately reflect the actual negotiated agreement of the parties. The union asserts that "[t]he grievance clearly raises a question about the 'meaning or application' of the provisions of the agreement when it questions whether the proper wage rates are being paid to employees." (Appellant's Br. at 11.)

We agree. The district court erred by considering the merits of the dispute. At this point, we need not decide whether an award would "draw[] its essence" from the contract or require a revision to the contract. Enterprise Wheel & Car Corp., 363 U.S. at 597. Instead, we are only concerned with whether the dispute over the proper rate of pay is within the scope of the arbitration clause.

The arbitration clause provides for arbitration of "differences" involving "the meaning or application of any of the provisions of this Agreement." (Appellant's App. at A17.) The district court concluded that the grievance did not challenge the meaning or application of a provision of the agreement, but rather asserted and attempted to arbitrate a prior right that was no longer articulated in the agreement. It is true that the five cent per hour increase negotiated in the 1994 agreement is nonexistent in the 1996 agreement as drafted by the company. The union contends, however, that it did not agree to give up the previously negotiated pay increase but assumed, given the parties' bargaining history, that the provision would remain unchanged--except that the parties

6

agreed to delete the set off arrangement of the asterisked paragraph. In sum, the union asserts that the company's draft of the agreement does not accurately reflect the actual 1996 negotiated agreement, and therefore the dispute amounts to a difference about the meaning or application of the agreement within the scope of the arbitration clause.

We believe that this dispute involves "the meaning or application" of the wage schedule provision of the agreement and that the language of the arbitration clause is broad enough to encompass this dispute. Though we are not completely free from doubt, the Supreme Court has quite clearly told us that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. Additionally, under a nearly identical arbitration provision in Warrior & Gulf, 363 U.S. at 576 (providing for arbitration when "differences arise between [the parties] as to the meaning and application of the provisions of this Agreement"), the Supreme Court labeled the provision as "quite broad," 363 U.S. at 585, and held that absent "any express provision excluding a particular grievance from arbitration we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." Id. at 584-85. Absent any clear exclusionary language in this case, we believe that the presumption in favor of arbitration carries the day.

Furthermore, the union has disputed the accuracy of the written draft from the very beginning, and it preserved its objection to the wage rate when it signed the collective bargaining agreement. The company drafted the agreement and now seeks to avoid its obligation to arbitrate by its own omission of what the union believed was an agreed upon provision of the wage schedule of the new agreement. The arbitration clause allows the parties to arbitrate this dispute over the meaning of their agreement, and the question of whether the parties' unwritten agreement at the close of negotiations included an intent to maintain the previously negotiated wage increase is a proper subject for the informed judgment of an arbitrator. We have said that "[i]n interpreting

a collective bargaining agreement it is often necessary to go outside the four corners of the contract itself and examine the agreement history to ascertain the intent of the agreement and determine the rights and duties of the parties." International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. White Motor Corp., 505 F.2d 1193, 1197 (8th Cir. 1974), cert. denied, 421 U.S. 921 (1975).

## III.

Accordingly, we reverse the judgment of the district court and remand for entry of declaratory judgment requiring the company to arbitrate the grievance.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT