195 F.Supp.2d 1150 (2002)
INDUSTRIAL WIRE PRODUCTS, INC., Plaintiff,
v.
TEAMSTERS LOCAL UNION NO. 688, Affiliated with International Brotherhood of Teamsters, AFLCIO, Defendant.
No. 4:00CV1667CDP.
United States District Court, E.D. Missouri, Eastern Division.
March 12, 2002.
*1151 Mark J. Rubinelli, Greensfelder and Hemker, St. Louis, MO, for Plaintiff.
Clyde E. Craig, Clyde E. Craig, P.C., St. Louis, MO, Brian A. Spector, Spector and Wolfe, LLC, Kirkwood, MO, for Defendant.

MEMORANDUM AND ORDER
PERRY, District Judge.
Plaintiff Industrial Wire Products, Inc. and defendant Teamsters Local Union No. 688 are parties to a series of collective bargaining agreements. The company filed this suit to vacate an arbitration award entered in favor of the union. The union counterclaimed, seeking enforcement of the arbitration award and an order requiring the company to submit two other grievances to arbitration. The union also seeks attorneys' fees. The parties have filed cross-motions for summary judgment, and the facts are largely undisputed.
I find that the company has failed to show that the arbitrator's decision did not "draw its essence" from the Collective Bargaining Agreement, and therefore I will deny the motion to vacate and instead will confirm the arbitration award. I find that the union has shown that the other two grievances are arbitrable, and so I will compel arbitration of those grievances. Finally, I find that Industrial Wire's position in this matter has been taken in good faith, and that therefore an award of attorneys' fees would not be just.

Background
Industrial Wire and Local 688 have been parties to collective bargaining agreements for several years. This dispute began with negotiations leading up to the 1996 agreement. The dispute centers on whether a five cent wage increase that had been included in the 1994 CBA was included in the 1996 CBA. The arbitrator ruled that it was. Industrial Wire asks that I vacate that award, while the union asks that I confirm it. Additionally, the union asks me to order Industrial Wire to arbitrate whether the same five cent wage increase was included in the 1999 CBA. While normally one could look to the language of the agreements to resolve these disputes with relative ease, this case is not so simple.
In 1997 the union filed suit to require the company to arbitrate their dispute. I ruled in favor of the company and held that the dispute was not arbitrable, but the *1152 Court of Appeals reversed, holding that the arbitration clause of the 1996 CBA allowed the parties to arbitrate their dispute over the meaning of the agreement. Teamsters v. Industrial Wire, 186 F.3d 878 (8th Cir.1999). The Court ruled that I erred in considering the merits of the dispute, and stated, "At this point we need not decide whether an award would draw its essence from the contract or require a revision to the contract." Id. at 881 (citations omitted).
The Court of Appeals set out the facts underlying the negotiations, and I will quote that recitation, as it remains accurate according to the evidence presented to me on the pending motions for summary judgment:
In 1994, the union and the company negotiated a collective bargaining agreement that included a five cent per hour wage increase for all employees. The agreement also provided for a new incentive compensation program, through which employees could earn a bonus based upon plant productivity. An asterisked paragraph in the footnotes to the wage schedule explained, however, that the five cent hourly wage increase would be set off against any bonus earned through the new incentive program. In other words, employees would receive bonus compensation only to the extent any bonus earned exceeded the five cent per hour wage increaseemployees were not allowed to accumulate both benefits simultaneously.
In 1996, the parties began negotiating a new collective bargaining agreement. The union first proposed eliminating the incentive compensation program, but the company wanted to retain the incentive program. At another negotiating meeting, the union proposed a 50 cent per hour wage increase for all employees, which the company rejected. Negotiations continued, and the company ultimately agreed to implement wage increases of 20 cents per hour the first year, 5 cents per hour the second year, and 10 cents per hour the third year. The company also proposed deleting the asterisked paragraph of the 1994 agreement, which explained the set off arrangement between the five cent wage increase and the bonus incentive program.
The company drafted the written collective bargaining agreement reflecting the parties' final proposals. Among other things, the draft included an arbitration clause and omitted the asterisked paragraph from the wage schedule that had been included in the 1994 contract. In the new draft, the company replaced the prior five cent increase described in that paragraph with the newly agreed upon wage increase. Thus, the new draft eliminated the previously agreed upon and implemented five cent per hour increase, which was in the 1994 agreement. The union objected to the draft stating that it believed the parties agreed to eliminate only the set off arrangement, not the previously implemented five cent wage increase. The union refused to sign the 1996 collective bargaining agreement as drafted, asserting it did not reflect the actual agreement of the parties.
On August 13, 1996, an employee filed a grievance alleging that the company violated the collective bargaining agreement by altering the negotiated wage rate. Specifically, the employee complained, "The company has taken .05 from our wages." (Appellant's App. at A44). The company refused to accept the grievance as valid under the collective bargaining agreement, which provides a grievance procedure including arbitration for all "differences" that arise between the parties "as to the meaning or application of the provisions of this Agreement." (Id. at A17). On *1153 December 16, 1996, the union agreed to sign the 1996 written collective bargaining agreement as drafted by the company as long as the company provided written acknowledgment that the union did not thereby abandon its grievance. The company complied, but maintained its position that the grievance was not valid under the 1996 collective bargaining agreement.
186 F.2d at 879-880.
After the Court of Appeals' decided the dispute was arbitrable, the parties proceeded to arbitration before a board of three arbitrators. Counsel for the union and for the company were the party-arbitrators, and the neutral arbitrator was Thomas A. Cipolla. Following a hearing, arbitrator Cipolla ruled in favor of the union. The union arbitrator joined in the decision, the company arbitrator dissented. Neither party raises any procedural problems with the arbitration: the company argues that the arbitrator's award does not "draw its essence" from the CBA.
The arbitrator stated the issues as follows:
Is the grievance arbitrable? If the grievance is arbitrable, are the wage rates stated correctly in the agreement, and if not, what is the appropriate remedy?
The arbitrability issue presented to the arbitrator was one of timeliness, and is not before me. After Cippola resolved that dispute in favor of arbitration, he went on to discuss the merits of the dispute, as follows:
As the parties have recognized, this case is somewhat unique in that the union is requesting that the Board interpret a Company proposal made at the bargaining table and reform the agreement against the Company's interest because the proposal was either unclear and/or not explained. The Company contends that the proposal was explained and that the contract wage revisions in the new agreement are accurate and reflect the intent of the proposal, and therefore should be enforced.
There were several credibility issues presented at the hearing. They include whether or not the offset/five cent proposed elimination was explained at negotiations by the Company and whether or not during an "off-the-record telephone conversation" between the chief spokesmen for the Company and the Union (after the grievance was filed), the Company spokesman admitted that the proposal did not indicate that five cents an hour was being deleted from the base wages. However, before addressing those credibility issues, a review of the language of the written proposals is appropriate.
The proposal to eliminate the footnotes on pages 26 and 28 (See Relevant Documents section of this Award) remained the same throughout the negotiations. The paragraph being eliminated is also set forth in the Relevant Documents section. It states that five cents of the specific increase shall apply to all hours worked by the employee. However, all amounts received pursuant to this five cent per hour increase were to be set off against any monthly incentive bonus to which the employee might be entitled. If one eliminates this paragraph, obviously, there is no more offset against the bonus.
The question than arises as to whether or not the five cents still exists after the elimination of the footnote paragraph. The intent of language is to be determined by the plain and ordinary meaning of the words used. The proposal indicated an intent to delete the first paragraph of footnotes to the wage rates stated in Exhibit "A" of the prior agreement but it did not reduce the base wage rates found in Exhibit "A". In *1154 other words, the five cents clearly remains but is no longer a set-off against any incentive bonus earned in the new agreement. Furthermore, there is no other written proposal to delete this five cents from the base wage.
While there may have been discussions about the proposal during the give and take of negotiating at the bargaining table, the final offer does not reflect anything other than a deletion of the first paragraph of the footnotes on page 26 of the old agreement and does not indicate a change in the existing base rates. Having found that the language of the written proposal controls, it is not necessary to resolve the credibility issues raised.
Thus, the 1996-1999 collective bargaining agreement reflects rates which are five cents below those accepted and ratified by the Union on July 23, 1996. An appropriate award would be a reformation of the contract to reflect an increase in wage rates by five cents an hour retroactive to the date the grievance was filed, August 16, 1996 (albeit the first raise was retroactive to June 1, 1996) and award said monies to effective employees. Since no interest was requested on any back pay amount, it shall not be part of the remedy.
While the earlier case was pending before the Court of Appeals, the parties began negotiations regarding the agreement that would cover the years 1999 to 2002. At one point during those negotiations the union representative asked the company attorney if they could discuss the "5 cent" lawsuit, and the company said it was not interested in negotiating the "5 cent" issue. No more discussions of the issue took place, and both parties signed the new agreement. Unlike in the 1996 negotiations, the union did not ask for a reservation of rights or make any statement, written or orally, that it was signing the 1999 agreement subject to this dispute, or that it considered the wages due to actually be five cents higher than those listed in the 1999 CBA. Now, however, the union takes the position that its position was understood by both parties, and was not raised during the negotiations because of the pending litigation and representation by counsel.

Discussion
The Supreme Court has made very clear the limited role of a court in reviewing labor arbitration awards:
Collective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances. In such cases, ... the courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate. Id., at 597, 80 S.Ct., at 1361, 80 S.Ct. 1358.
United Paperworkers Intern. Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). My role in reviewing the decision here is "confined to ascertaining *1155 whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." Id., quoting Steelworkers, 363 U.S. at 567.
Here the 1994, 1996, and 1999 Collective Bargaining Agreements all contained grievance procedures providing for arbitration of disputes "as to the meaning or application of the provisions of this Agreement." The 1996 and 1999 agreements also contain the following provision: "The Arbitration Panel shall have no authority to add to, revise, delete, or disregard any provision of the Labor Agreement."
Thus, I may not set aside the Arbitrator's decision here unless I determine that it covers a claim not based on the contract, or that the award does not "draw its essence" from the contract. Whether I think the arbitrator's decision is a correct interpretation of the contract is irrelevant. See e.g., George A. Hormel & Co. v. United Food & Comm'l Workers, 879 F.2d 347, 349 (8th Cir.1989) ("A court has no business overruling an arbitrator because the court's interpretation of the agreement is different from that of the arbitrator.")
The Company argues that because the five cent wage increase is not included on the face of the 1996 agreement, the arbitrator's decision added terms to the agreement, rather than interpreted it, and that therefore the decision cannot "draw its essence" from that agreement. When I ruled on this case before, I agreed with that argument, but the Court of Appeals reversed that decision, although, of course, the Court did not reach the merits, since the arbitration had not yet taken place. In its decision, however, the Court of Appeals expressly understood that the arbitrator would have to go beyond the written agreement to decide this issue. The Court stated:
The arbitration clause allows the parties to arbitrate this dispute over the meaning of their agreement, and the question of whether the parties' unwritten agreement at the close of negotiations included an intent to maintain the previously negotiated wage increase is a proper subject for the informed judgment of an arbitrator. We have said that "[i]n interpreting a collective bargaining agreement it is often necessary to go outside the four corners of the contract itself and examine the agreement history to ascertain the intent of the agreement and determine the rights and duties of the parties."
186 F.2d at 882-883, quoting International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. White Motor Corp., 505 F.2d 1193, 1197 (8th Cir.1974).
Here the Arbitrator heard contested evidence from the parties about their negotiations and reviewed the written drafts that they exchanged leading up to the signed 1996 agreement. He concluded that the final offer did not change the existing base rates and therefore did not delete the disputed five cents. He discussed all the evidence and explained the basis for his conclusion. I cannot conclude that this decision fails to "draw its essence" from the contract, especially in light of the Eighth Circuit's explicit direction that the arbitrator could decide this issue and could consider the parties' negotiations in doing so.
The Company argues that if the five cents is included, there was no meeting of the minds, and therefore there was no contract to interpret. It relies on United Food and Commercial Workers Union v. NLRB, 772 F.2d 421 (8th Cir.1985), and similar NLRB cases holding that if parties have not agreed on all the substantive issues, there can be no contract. The arbitrator *1156 here, however, found that the parties had reached agreement and the agreement did not rescind the five cents. In essence the Company is simply asking me to substitute my judgment for that of the arbitrator on the proper legal interpretation of the contract and the negotiations leading up to it, and this I cannot do.
Because the Company has failed to show that the arbitrator's decision did not "draw its essence" from the contract, I must deny the Company's request to vacate the arbitration award and I will grant the union's request that I confirm the arbitration award.
Next I must decide whether to require the company to submit the two new grievances, regarding the meaning of the 1999 agreement, to arbitration. The only distinction between the arbitrability dispute this time around and that in 1996 is that the union did not explicitly reserve its rights when it signed the 1999 agreement. The union claims that doing so was not necessary because of the ongoing litigation over the five cents. The company claims that it made its position clear during the negotiations, and that the rates set out in the 1999 agreement, which do not include the disputed five cents, are clear and unambiguous.
I find that this dispute is essentially the same as the one presented to me before regarding the 1996 agreement. Although it sounds to me as if the company has a stronger argument here because there was no explicit reservation of rights, that is simply my legal opinion, and the parties have agreed that it will be an arbitrator's legal opinionnot minethat they will be governed by. I believe that this dispute, like the one presented to me before, "involves `the meaning or application' of the wage schedule provision of the agreement and that the language of the arbitration clause is broad enough to encompass this dispute." Teamsters v. Industrial Wire, 186 F.3d at 882.
Because I believe that the arbitrability of the remaining disputes is dictated by the prior decision of the Court of Appeals, I will grant the union's summary judgment motion and compel arbitration.

Attorneys' Fees
Although the statute here does not explicitly authorize an award of attorneys' fees, the Eighth Circuit Court of Appeals has held that fees can be awarded where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." International Union, United Automobile, Aerospace and Agricultural Implement Workers v. United Farm Tools, Inc., 762 F.2d 76, 77 (8th Cir.1985). The underlying rationale for doing so is "punishment of the wrongdoer rather than compensation of the victim." Actors' Equity Association v. American Dinner Theatre Institute, 802 F.2d 1038, 1042 (8th Cir.1986). Attorneys fees should generally be limited to cases where the claims are "frivolous, unreasonable or groundless." Id.
This standard is far from met here. The parties here had a good faith dispute about what they had agreed to, and the good faith dispute extended (and still extends) to whether the dispute itself is arbitrable. I initially believed that the company was right. The Court of Appeals stated that it was "not completely free from doubt," about whether the dispute should be arbitrated. 186 F.3d at 882. Where one judge initially agreed with the company and three others said they were not "completely free from doubt," the union's argument that the company's position was frivolous and taken in bad faith itself borders on the frivolous. The parties had a good faith disagreement, and an award of attorneys fees is not appropriate.
Accordingly,
*1157 IT IS HEREBY ORDERED that plaintiff's motion for summary judgment [17] is denied except for the claim for attorneys' fees, and defendant's motions for summary judgment [## 18, 19] are granted, except for the claim for attorneys' fees.
A separate judgment in accord with this opinion is entered this same date.