# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1905

_____

| | | |
|---|---|---|
| Marathon Ashland Petroleum, LLC., | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| International Brotherhood of Teamsters, | * | |
| Chauffeurs, Warehousemen, and | * | Appeal from the United States |
| Helpers of America, General Drivers, | * | District Court for the |
| Helpers and Truck Terminal | * | District of Minnesota |
| Employee Union, Local No. 120, | * | |
| Sued as General Driver, Helper, and | * | |
| Truck Terminal Employees Teamster, | * | |
| Local No. 120, International | * | |
| Brotherhood of Teamsters, Chauffeurs, | * | |
| Warehousemen and Helpers of America, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 11, 2001

Filed: August 23, 2002

_____

Before McMILLIAN and MURPHY, Circuit Judges, and BATTEY,[1] District
    Judge.

_____

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District
of South Dakota, sitting by designation.

McMILLIAN, Circuit Judge.

General Driver, Helper, and Truck Terminal Employees Teamster, Local No. 120, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Local 120 or the Union) appeals from a judgment entered in the district court[2] granting summary judgment in favor of Marathon Ashland Petroleum, LLC (MAP). For reversal, the Union argues that the district court erred in holding that a bonus program was not subject to arbitration. We affirm.

## BACKGROUND

On January 1, 1998, Marathon Oil Co. (Marathon) and Ashland, Inc. (Ashland) formed MAP as a joint venture to engage in crude oil refinery and distribution operations. Marathon and Ashland acquired interests in MAP in return for their contributions of assets to MAP. Among other things, Ashland contributed a refinery located in St. Paul Park, Minnesota, and its equipment. Ashland also loaned the members of Local 120 to MAP. The members were subject to the collective bargaining agreement between the Union and Ashland (Ashland CBA), but MAP administered the Ashland CBA on behalf of Ashland. The CBA was effective from June 1, 1996, to May 31, 1999. Article 19 of the Ashland CBA provided for arbitration of "any controversy aris[ing] over the interpretation of and/or the application of the contents of this Agreement." It also provided for arbitration of a violation of "the provisions of the terms of this Agreement relating to seniority rights, wages, hours of work, overtime differentials, vacations, or any other provisions of this Agreement." Some of Ashland's non-union employees became MAP employees, including the refinery's general manager James Nelson. After MAP's creation, Marathon and Ashland

_____

[2]The Honorable Donald D. Alsop, Senior United States District Judge for the District of Minnesota.

continued to operate as separate entities. Neither engaged directly in refining crude oil.

In February 1998, MAP and the Union began negotiations for a collective bargaining agreement between the parties to be effective on the expiration of the Ashland CBA. MAP offered to grant a three-year extension of the Ashland CBA with wage increases and new benefits. One of the benefits was the Success Through People (STP) bonus program. The Union rejected the offer. In October 1998, MAP again extended the offer. In a letter to the employees, MAP noted that the 1998 STP bonus was only available if the Union accepted MAP's offer before October 31, 1998. The Union did not respond to the offer by the deadline.

On May 13, 1999, MAP issued STP bonus checks to its employees. MAP did not provide bonuses to any Ashland employee. On May 14, 1999, Joe Riley filed a grievance on behalf of Local 120 members against MAP. Riley asserted that the members were entitled to the STP bonus and had been "discriminated against being Ashland employees." The grievance was stayed pending the contract negotiations.

During negotiations, MAP agreed to the Union's proposal that the collective bargaining agreement provide for participation in the STP bonus program. MAP, however, did not agree to the Union's proposal that its members receive the 1998 STP bonus as settlement of the Riley grievance. On June 22, 1999, MAP and the Union entered into a tentative collective bargaining agreement, which was ratified and effective from June 1, 1999, to May 31, 2002. MAP and the Union agreed that the Riley grievance would go forward "without prejudice," which meant that "the grievance would proceed just as if the issue had never been raised at all in the 1999 negotiations." MAP and the Union also entered into a letter agreement providing that the MAP employees represented by the Union were eligible to participate in the STP program as of January 1, 1999. The letter agreement further provided that "participation or non-participation in the Program, the receipt or non-receipt of

payment under the terms of the Program, and any such action shall not be subject to . . . arbitration."

MAP denied the Riley grievance on September 15, 1999, and the Union requested arbitration. After receiving notice of the Union's request for arbitration, MAP wrote the Union that the grievance was not subject to arbitration, noting that the STP bonus was not covered in the Ashland CBA and that the union members were not MAP employees at the relevant time. MAP again wrote the Union stating that although MAP would participate in selecting a panel of arbitrators, it was not waiving its position that the grievance was not subject to arbitration.

On December 29, 1999, MAP filed an action in district court seeking a declaration that it was not obligated to arbitrate the grievance. The district court granted MAP's motion for summary judgment. The district court rejected the Union's argument that MAP was subject to the arbitration provision of the Ashland CBA and the Union's alternative argument that MAP's conduct created a duty to arbitrate the grievance. In addition, the district court rejected the Union's argument that the Riley grievance implicated the Ashland CBA's anti-union discrimination provision, noting that the grievance did not allege a deprivation resulting from an anti-union motivation.

**DISCUSSION**

"We review the district court's grant of summary judgment de novo." Bass v. City of Sioux Falls, 232 F.3d 615, 617 (8th Cir. 1999). Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Union, we "will affirm . . . only if there is no genuine issue of material fact and [MAP] is entitled to judgment as a mater of law." Id. (internal quotation omitted).

The Union argues that the district court erred in rejecting its argument that MAP was subject to the arbitration provisions of the Ashland CBA. As a general rule,

"only a party to a collective bargaining agreement is bound by its terms." Crest Tankers, Inc. v. Nat'l Mar. Union of Am., 796 F.2d 234, 237 (8th Cir. 1986) (Crest Tankers). "[H]owever, in some instances, an employer which has not signed a labor contract may be so closely tied to a signatory employer as to bind them both to the agreement." Id. In this instance, the Union asserts that MAP was bound to the arbitration provision of the Ashland CBA under the single employer doctrine, which "focuses on whether two or more existing business entities should be jointly held to a single labor obligation." Iowa Express Distribution, Inc. v. NLRB, 739 F.2d 1305, 1310 (8th Cir.), cert. denied, 469 U.S. 1088 (1984). MAP responds that the Union has confused the single employer doctrine with the alter ego doctrine, which "focuses on whether one business entity should be held to the labor obligations of another business entity that has discontinued operations." Id. Unlike the single employer doctrine, "a critical part of the inquiry into alter ego status . . . is whether the employers acted out of anti-union sentiment or to avoid a labor contract." Crest Tankers, 796 F.2d at 237.

MAP argues that it is a successor company to Ashland and because there is no evidence to support an alter ego finding, it cannot be bound by Ashland CBA's arbitration provision. Although we have noted the differences in the two doctrines, we have also noted that the doctrines are not "neat categories." Id. at 236 n.1. Indeed, the Supreme Court has stated that the label of "successor" is meaningless in the abstract. Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Rest. Employees, 417 U.S. 249, 262 n.9 (1974) (Howard Johnson). Rather, the Supreme Court stated that "the real question in each of these 'successorship' cases is, on the particular facts, what are the legal obligations of the new employer to employees of the former owner or their representative." Id. In Howard Johnson, the Supreme Court held where there was "no substantial continuity of identity in the work force hired by [a successor company] with that of the [predecessor company], and no express or implied assumption of the agreement to arbitrate," the company could not be compelled to arbitrate under its predecessor's collective bargaining agreement. Id. at 264; see also Smegal v. Gateway Foods of Minneapolis, Inc., 819 F.2d 191, 193 (8th

Cir.) ("major test for a successor employer is whether there is substantial continuity between the new operation and the old, particularly with regard to the employees"), cert. denied, 484 U.S. 928 (1987).

After reviewing the relevant Supreme Court cases on successorship liability, Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27 (1987); Howard Johnson, 417 U.S. at 249; NLRB v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272 (1972); John Wiley & Sons v. Livingston, 376 U.S. 543 (1964), the Third Circuit has described them as "treacherous waters," noting the cases are confusing and conflicting. AmeriSteel Corp. v. Int'l Bhd. of Teamsters, 267 F.3d 264, 267 (3d Cir. 2001); see also NLRB v. Hosp. San Rafael, Inc., 42 F.3d 45, 48 (1st Cir. 1994) (labor-law successorship cases are "difficult because the pertinent doctrines have confusing labels, overlap with one another and occasionally mutate"), cert. denied, 516 U.S. 927 (1995). We need not wade into these "treacherous waters." For purposes of this opinion, we will assume that MAP was subject to the arbitration provision of the Ashland CBA.

Assuming for purposes of analysis that MAP is bound by the Ashland CBA, we must decide whether the grievance concerning the STP bonus fell "within the scope the [Ashland's CBA] arbitration clause." Teamsters Local Union No. 688 v. Indus. Wire Prods., Inc., 186 F.3d 878, 882 (8th Cir.1999) (Indus. Wire). As previously indicated, Article 19 of the Ashland CBA provided for arbitration of "any controversy arsis[ing] over the interpretation of and/or the application of the contents of this Agreement" and violations of "the provisions of the terms of this Agreement relating to seniority rights, wages, hours of work, overtime differentials, vacations, or any other provisions of this Agreement."

Because the Ashland CBA contained an arbitration provision, the Union argues that "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers the asserted the dispute." AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (AT& T) (internal quotation omitted). In addition, the Union argues because the arbitration clause is broad, the presumption can be overcome only if there is an "express provision excluding [the] particular grievance from arbitration" or "forceful evidence of a purpose to exclude the claim from arbitration." Id.

However, we note that the presumption as to arbitrability "must operate with regard to the intent of the contracting parties." Indus. Wire, 186 F.3d at 881. This is so because "arbitration is a matter of consent." Id. Morever, the presumption "does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position that courts to interpret the terms of a CBA." Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78 (1998). In other words, the presumption applies to matters concerning the interpretation or application of the terms of a collective bargaining agreement, but does not apply to matters "which go beyond the interpretation and application of contract terms." Id. at 79. Thus, we must determine whether the grievance on its face implicates the "interpretation of and/or application of the contents of" or a violation of the Ashland CBA, as Article 19 provided.

As MAP notes, the STP bonus is not mentioned in the Ashland CBA, which is not surprising since it was a MAP benefit created almost two years after the Union and Ashland executed the Ashland CBA. The Union does not contend that the grievance implicates provisions of the Ashland CBA concerning bonuses or benefits. Rather, the Union argues that "[i]t is enough that the Union has pointed to the anti-discrimination provision of the [Ashland CBA] and asserted a violation of that specific provision." Brief for Appellant at 29. The Union notes that Article I of the CBA states: "There shall be no discrimination against any employee because of their (sic) Union affiliation." The Union argues that the Riley grievance alleged that MAP had violated Article I by discriminating against union members. We disagree.

-7-

Although we may not consider the merits of the grievance, AT &T, 475 U.S. at 649, we agree with the district court that the grievance on its face did not implicate Article I's anti-discrimination provision. The grievance did not allege that MAP discriminated "because of" union affiliation, as Article I required. Rather, the grievance alleged that the Union employees were discriminated against because they were Ashland employees. Indeed, the first sentence of the grievance stated: " We feel that we were discriminated against being Ashland employees." Although the grievance noted that non-union employees of the St. Paul refinery had received the STP bonus, the Union did not dispute that the employees were MAP employees. Nor did the Union dispute that union-represented MAP employees at other MAP refineries received the STP bonus. Nothing in the Ashland CBA prohibited MAP from discriminating between Ashland and MAP employees in awarding MAP benefits. Indeed, at argument before the district court, counsel for the Union appeared to concede that he was the one who was putting forth the theory that the employees had been discriminated against because they were union members. As MAP notes, the Ashland CBA provided that an arbitrator may only consider the grievance submitted, not an after-the-fact interpretation by the Union's lawyer.

The Union also argues that even if the Riley grievance falls outside the scope of the arbitration provision, the district court erred in granting summary judgment because there is a question of fact as to whether MAP agreed to arbitrate the Riley grievance. The district court did not err. Contrary to the Union's argument, MAP did not waive its objection to arbitration by agreeing to participate in selecting the panel of arbitrators, while at the same time expressly objecting to arbitration, and by filing this suit. The Union's reliance on Capital City Tel. Co. v. Communications Workers of Am., 575 F.2d 655 (8th Cir. 1978), is misplaced. In Capital City, this court held that even if a collective bargaining agreement had not provided for arbitration of an issue, the company had agreed to do so by stipulating, without reservation, in "clear,

unambiguous language" to submit the issue to arbitration.  Id. at 658.  In contrast in this case, MAP clearly and unambiguously reserved its objection to arbitration.

Nor was there a dispute issue of fact whether MAP orally agreed to submit to the Riley grievance to arbitration during the June 1999 contract negotiations.  The district court held that the parol evidence rule barred consideration of any alleged oral agreement, noting that the letter agreement between MAP and the Union provided actions concerning the STP bonus program were not subject to arbitration.  The Union argues that the district court erred because the alleged oral agreement to arbitrate arose under the Ashland CBA, not under the MAP collective bargaining agreement. Even absent application of the parol evidence rule, the Union's evidence does not raise a disputed issue of fact that MAP had agreed to arbitrate the Riley grievance under the Ashland CBA.  The Union relies on the August 2000 deposition of Bradley Slawson, one of the Union's representatives during negotiations.  MAP's counsel asked Slawson about conversations he had with Jim Nelson on June 22, 1999, the last day of negotiations.  Slawson testified that although Nelson had agreed to arbitrate the grievance, Slawson would not agree to arbitration but offered to "withdraw the issue of STP without prejudice." Appellant's App. at 82. Slawson further testified that after he explained to Nelson that "without prejudice me[ant] that both sides would retain their original positions and the grievance would go forward," Nelson agreed to the withdrawal without prejudice.  Id.  After a break, in response to questions from the Union's counsel, Slawson testified that later that day Nelson again brought up arbitration of the grievance and agreed to arbitrate if the union's proposal concerning the STP bonus was withdrawn without prejudice.  Slawson further testified that he then told the Union committee that withdrawing the  STP issue "without prejudice mea[nt] that the case would go to arbitration as if it were never brought up at the bargaining table." Id. at 85.

We agree with MAP that Slawson's revised testimony does not create an issue of disputed fact.  It is well-established that "parties to summary judgment cannot

create sham issues of fact in an effort to defeat summary judgment" and that "'a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before.'" Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 111 (8th Cir. 1997) (Am. Airlines) (quoting Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988)). This is so because "'[o]therwise, any party could head off summary judgment by supplanting previous depositions ad hoc with a new affidavit, and no case would ever be appropriate for summary judgment.'" Id. (quoting Wilson, 838 F.2d at 289). Contrary to the Union's argument, the sham exception doctrine is not limited solely to situations when the party submits "an affidavit contradicting his own earlier testimony." Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995). In context, Slawson's testimony after the break was not a mere clarification of his earlier testimony, but was a "sudden and unexplained revision" to create an issue where none existed before. Am. Airlines, 114 F.3d at 111.

Although we must give the Union the benefit of all reasonable inferences from its evidence, we do not give it the benefit of unreasonable inferences. We believe it is unreasonable to infer from Slawson's initial testimony that withdrawing the Union's demand for the 1998 STP bonus "'without prejudice" meant that MAP had agreed to arbitrate the issue. As MAP notes, the Riley grievance had not even been heard by that date, much less denied, so that there was no reason for Nelson to agree to take the issue to arbitration. Rather, the meaning of the agreement was as Slawson first testified, "that both sides would retain their original positions and the grievance could go forward." Appellant's App. at 82. Agreeing to hear the Riley grievance does not mean that MAP agreed without reservation to arbitrate the issue under the Ashland CBA. Indeed, even when "the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look to their contract and to the submission of the issue to the arbiter to determine his authority.'" Local 238, Int'l Bhd. of Teamsters v. Cargill, Inc. 66 F.3d 988, 991 (8th Cir. 1995) (quoting John Morrell & Co. v. Local Union 304A, 913 F.2d 544, 561 (1990), cert denied, 500 U.S. 905

(1991)).  Here, there was no promise and, instead of submitting of the issue to an arbitrator, MAP filed this suit.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-