**LOCAL 447 OF THE INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, Plaintiff,**

v.

**FIVE SEASONS PAINT AND DRYWALL, INC., Defendant.**

**No. 4:04 CV 00683 JEG.**

United States District Court, S.D. Iowa, Central Division.

April 3, 2006.

Mark T. Hedberg, Nathaniel Randell Boulton, Hedberg Owens Hedberg & Walsh PC, Des Moines, IA, for Plaintiff and Counter Defendant.

Kelly R. Baier, Bradley & Riley, Cedar Rapids, IA, for Defendant and Counter Claimant.

## ORDER

GRITZNER, District Judge.

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Clerk's No. 10) and Defendant's Motion for Partial Summary Judgment (Clerk's No. 11). Plaintiff Local 447 of the International Union of Painters and Allied Trades is represented by Mark Hedberg and Nathaniel Boulton. Defendant Five Seasons Paint and Drywall, Inc., is represented by Kelly Baier. Neither party has requested a hearing, and one is unnecessary to resolve the pending motions. The matter is fully submitted and is ready for disposition.

### SUMMARY OF MATERIAL FACTS

Local 447 of the International Union of Painters and Allied Trades ("Local 447") is a labor organization representing employees and industries affecting commerce as defined by the Labor Management Relations Act of 1947 ("LMRA"). *See* 29 U.S.C. §§ 142(1), 152(3)-(7) (2000). The Defendant, Five Seasons Paint and Drywall, Inc. ("Five Seasons"), is an employer authorized to do business in the state of

Iowa and is engaged in an industry affecting commerce as defined by the LMRA. *See id.* §§ 142(1), 152(2), (6)-(7). Five Seasons is owned by an individual named Randy Feaker.

Local 447 and Five Seasons entered into a collective bargaining agreement ("the Agreement") on January 11, 2001, which was retroactive to May 10, 2000. *See* Agreement art. XXVI, § 1. By its terms, the Agreement was to expire on April 30, 2003. *Id.* Upon signing the Agreement, Five Seasons "recognize[d], acknowledge[d], and agree[d] that [Local 447 was], within the meaning of Section 9(a) of the National Labor Relations Act, the exclusive representative for the purpose of collective bargaining, of all of [Five Seasons'] employees" covered by the Agreement. *Id.* art. II, § 1.

The Agreement contains grievance procedures designed to structure disputes between Local 447 or its members and Five Seasons. *See id.* art. XXII. The Agreement defines a grievance as "any dispute between [Five Seasons] and [Local 447], or between [Five Seasons] and any employee, concerning the effect, interpretation, application, claim of breach or violation of [the] Agreement, or any other dispute which may arise during the term of [the] Agreement." *Id.* Grievances resolved pursuant to the Agreement proceed in three steps:

*Step One*—The employee shall attempt to adjust any grievance with the employer's supervisor involved. The grievance must be brought to the attention of the employee's supervisor within three (3) working days of the event leading to the grievance, or the grievance is barred.

*Step Two*—If the employee and the supervisor are unable to reach a satisfactory settlement within three (3) working days, the grievance shall be reduced to writing and the employee may then refer the grievance to the Union within two (2) working days of the failure to reach a satisfactory settlement. If the grievance is not so referred within ten (10) days of the event leading to the grievance, the grievance is barred.

*Step Three*—The Union shall then proceed within three (3) working days to take the grievance up with the Employer's designee. At the request of either party, the grievance meeting shall be taken in shorthand and a transcript made thereof and a copy furnished to both parties.... The employer shall provide a written answer to the Union within three (3) working days of the Step Three meeting.

*Id.* art. XXII, § 2. The grievance procedure provides for binding arbitration in the event disputes cannot be resolved. *Id.* art. XXII, §§ 3–8. Although the Agreement contains time periods within which disputes are to be resolved, *see id.* art. XXII, §§ 2–3, 7–8, those time periods "may be extended by written mutual agreement between [Five Seasons] and [Local 447]," *id.* art. XXII, § 9.

On February 19, 2003, more than two months before the Agreement was to expire, Local 447 filed a grievance against Five Seasons, claiming Five Seasons performed work through a corporation named Feaker Painting, Inc., without providing the wages and benefits required by the Agreement. Local 447 contended Five Seasons violated Article 24 of the Agreement, which provides, in relevant part,

If [Five Seasons] performs on-site construction work of the type covered by this agreement, under its own name *or the name of another*, as a corporation, company, partnership, or other business entity, including a joint venture, wherein [Five Seasons], through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise),

management, control, or majority ownership, the terms and conditions of this agreement shall be applicable to all such work.

*Id.* art. XXIV, § 1 (emphasis added). "[C]harges of violations" of this provision are to be processed under the grievance procedure. *Id.* art. XXIV, § 2.

Local 447 and Five Seasons exchanged pertinent written correspondence during the time this grievance was pending. A March 13, 2003, letter authored by William Guyer, Local 447's business manager and secretary-treasurer, suggested to Kelly Baier, Five Seasons' attorney, that the parties "agree in writing to extend the deadline [applicable to Local 447's grievance] until the parties either settle the grievance or one of the parties notifies the other of its intent to go forward." A March 19, 2003, letter authored by Baier indicated Five Seasons "agree[d] that the time period for filing the ... grievance be extended until the parties either settle the grievance or one of the parties notifies the other of its intent to go forward." Neither letter refers to negotiations relating to or terms to be contained within a new collective bargaining agreement.

Nearly sixteen months later, on July 16, 2004, Local 447 notified Five Seasons of its intent to proceed to arbitration with its grievance. Deb Groene, Guyer's successor, indicated in a November 2005 affidavit that Five Seasons has steadfastly refused to arbitrate Local 447's grievance.

At a time near their March 2003 correspondence (the record provides no specific date), the parties began negotiations for a new collective bargaining agreement. Five Seasons claims Guyer suggested to Feaker that if Five Seasons agreed to extend the time period within which Local 447's grievance could be resolved, any new collective bargaining agreement would include certain terms apparently favorable to Five Seasons. Feaker claims he relied

on Guyer's statements when he agreed to an extension.

The parties mutually agreed to delay the Agreement's expiration for ninety days so negotiations could continue. By March 2004, Local 447 became unresponsive to Five Seasons' requests for further negotiations. No new agreement was ultimately reached. Five Seasons claims its employees subsequently de-authorized their union dues checkoff that had previously gone to Local 447. Five Seasons also claims the Union Health and Welfare Fund, an entity providing health care insurance coverage to Five Seasons' employees under the Agreement, ceased providing health care insurance to Five Seasons employees on April 1, 2004. This conduct, Five Seasons contends, shows Local 447 abandoned its representation of Five Seasons employees' following the Agreement's expiration. Five Seasons argues Local 447 contemporaneously lost its authority to compel arbitration of its grievance.

Local 447 initiated the present action on December 7, 2004, seeking to compel Five Seasons to arbitrate its grievance in accordance with the Agreement. Local 447 has moved for summary judgment on this claim, claiming no fact question exists regarding whether Five Seasons must submit the grievance to arbitration. Five Seasons has also moved for summary judgment on Local 447's claim, arguing that because the Agreement has expired and because Local 447 thereafter abandoned its representation of Five Seasons' employees, Local 447 lacks authority to compel arbitration.

In addition to denying that Local 447 is entitled to the relief it seeks, Five Seasons has filed two counterclaims, each challenged by a motion for summary judgment by Local 447. In its first counterclaim, Five Seasons claims Local 447 violated Article 8 of the Agreement, which required

Local 447 to "refer applicants for employment" to Five Seasons, Agreement art. VIII, § 3, and also failed to ensure forty hours of mandatory apprentice training was held on a quarterly basis, as required by the Agreement. Local 447 has moved for summary judgment, arguing this counterclaim should be processed through the grievance procedure set forth in the Agreement. Local 447 further argues that any claim Five Seasons could have advanced premised on violations of the Agreement have been extinguished by operation of the applicable statute of limitations, as well as by the Agreement itself.

In its second counterclaim, Five Seasons claims Local 447 committed the tort of negligent misrepresentation. More specifically, Five Seasons contends Guyer falsely represented he would concede to the inclusion of terms apparently favorable to Five Seasons in a new collective bargaining agreement in exchange for an extension of the deadlines applicable to Local 447's grievance. Moving for summary judgment, Local 447 argues Five Seasons' counterclaim is preempted by the NLRA because evaluating the validity of this counterclaim necessitates construing the Agreement. Alternatively, Local 447 posits Five Seasons has not generated a fact question on each element of its second counterclaim.[1]

## DISCUSSION

Before addressing the parties' motions, a procedural issue must be resolved regarding the parties' statements of undisputed facts. On December 20, 2005, Local 447 filed a Statement of Disputed [sic] Facts in support of its resistance to Five Seasons' motion for partial summary judgment. Local 447 did not respond to some of Five Seasons' factual statements in any fashion.[2] Local 447 replied to a number of other factual assertions only by "submit[ting] that the facts articulated in [some paragraphs] are disputed as they are immaterial to this proceeding."[3] The statement proffered by Local 447 does not refer the Court to specific appendix pages containing deposition or affidavit testimony or other supporting evidence.

Five Seasons then moved the Court to deem admitted some of the factual statements Local 447 denied without record support.[4] In an unauthorized surreply brief, Local 447 claims that "[t]he Local Rule does not require every responses [sic] are [sic] to be supported with citations, but rather that citations be made where appropriate." Local 447 appears to believe citations to an appendix or other supporting documents are necessary only in situations where challenging a disputed fact would be something other than "inherently unproductive."

---

1. Local 447 also argues Five Seasons' claim "that [Local 447] has failed to negotiate with it regarding a new Collective Bargaining Agreement [should] be properly processed as an Unfair Labor Practice and not in this action." A diligent search of the record reveals Five Seasons does not seek relief under this theory of recovery.

2. Specifically, paragraphs 1, 3–4, 9–10, 13–14, 18–19, and 21 of Defendant's Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment lack a response by Local 447.

3. Specifically, Local 447 claims the facts in paragraphs 5–8, 15–17, and 20 of Defendant's Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment are immaterial.

4. Specifically, Five Seasons wishes the Court to deem admitted paragraphs 14–18, and 21 of its Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment.

■ Local 447's interpretation of the Local Rules is incorrect. Local Rule 56.1(b) provides, pertinently, that

> [a] response to an individual statement of material fact that is not expressly admitted *must* be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.

L.R. 56.1(b) (2006) (emphasis added). As the rule clearly shows, citations to documents supporting denials are not optional. *See id.* Consequently, deeming each fact identified by Five Seasons admitted would be an appropriate remedy for Local 447's failure to comply with the Local Rules. However, this dispute is largely academic because the facts Five Seasons wishes the Court to treat as admitted are immaterial to the pending motions, as explained more fully below. *See infra* notes 6, 8.

## I. Principles Governing Summary Judgment Motions.

Federal Rule of Civil Procedure 56(a) permits "[a] party seeking to recover on a claim ... [to] move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed.R.Civ.P. 56(a). Rule 56(b) permits "[a] party against whom a claim [or] counterclaim ... is asserted ... [to] move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." *Id.* R. 56(b). Local 447 has moved for summary judgment under both provisions, claiming entitlement to summary judgment on its own claim as well as Five Seasons' counterclaims. Five Seasons has moved for

summary judgment under only the latter, claiming entitlement to summary judgment on Local 447's claim.

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* R. 56(c). A fact is material if resolving a dispute about it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if it has a real basis in the record, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), that is, that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. *See also Anderson,* 477 U.S. at 250, 106 S.Ct. 2505 (requiring a trial if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party"); *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and pointing out places in the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then, the resisting party must "go beyond the pleadings and by [its] own affidavits,

or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). The resisting party need not resolve factual disputes in its favor, but some "'significant probative evidence tending to support'" its argument is required. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505 (quoting *Cities Serv.*, 391 U.S. at 290, 88 S.Ct. 1575). Throughout this process, the Court is required to read the record in a light most favorable to the nonmoving party, *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348.

The analysis first focuses upon Local 447's claim, upon which the parties have each moved for summary judgment. The analysis then turns to Five Seasons' counterclaims, upon which Local 447 claims entitlement to summary judgment.

## II. Local 447's Claim.

It is undisputed that no collective bargaining agreement now exists between the parties. Local 447 claims the grievance it filed on February 19, 2003, is nonetheless swept within the now-expired Agreement's compulsory arbitration terms. Five Seasons claims the existence of a fact question regarding whether Local 447 has since stopped representing Five Seasons' employees means Local 447 cannot compel arbitration.

Our nation's highest court has consistently and repeatedly stated that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute to which he has not agreed so to submit.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942–43, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

However, once parties have agreed to a contract containing an arbitration clause, "the Court has … long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). However, even if an agreement to arbitrate is present, courts, not arbitrators, determine the question of arbitrability, unless the parties unambiguously provide otherwise in their contract. *Howsam*, 537 U.S. at 83, 123 S.Ct. 588; *First Options*, 514 U.S. at 943, 115 S.Ct. 1920; *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208–09, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650–51, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Int'l Bhd. of Elec. Workers v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 627 (8th Cir.2005); *Kansas City S. Transport Co. v. Teamsters Local Union No. 41*, 126 F.3d 1059, 1064 (8th Cir.1997); *Actors' Equity Ass'n v. Am. Dinner Theatre Inst.*, 802 F.2d 1038, 1044 (8th Cir.1986); *see Teamsters Local Union No. 688 v. Indus. Wire Prods., Inc.*, 186 F.3d 878, 880–83 (8th Cir.1999).

When determining whether a dispute is arbitrable, principles derived from a series of cases known as the *Steelworkers Trilogy* guide the analysis. *See United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Our circuit has summarized the principles articulated by those cases as follows:

(1) arbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration; (2) unless the parties pro-

vide otherwise, courts decide the issue of whether the parties agreed to arbitrate; (3) courts cannot weigh the merits of the grievance in determining whether the claim is subject to arbitration; and (4) when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute. *Industrial Wire Prods.*, 186 F.3d at 881 (citing *AT & T Techs.*, 475 U.S. at 648–50, 106 S.Ct. 1415); *see also AT & T Techs.*, 475 U.S. at 648–50, 106 S.Ct. 1415; *GKN Aerospace*, 431 F.3d at 627. Applying these principles involves two steps. First, the Court must determine whether a valid agreement to arbitrate exists. *See United Steelworkers v. Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir.2005); *United Steelworkers v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir.2000); *Industrial Wire Prods.*, 186 F.3d at 881. If such an agreement exists, the Court must decide "whether the present 'dispute falls within the scope of the arbitration agreement.'" *Industrial Wire Prods.*, 186 F.3d at 881 (quoting *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999)); *accord Duluth Clinic*, 413 F.3d at 788; *Marathon Ashland Petroleum, LLC v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 949 (8th Cir.2002); *Titan Tire*, 204 F.3d at 860. Throughout this process, the Court must remain blind to the merits of the purported grievance. *See AT & T Techs.*, 475 U.S. at 649–50, 106 S.Ct. 1415; *GKN Aerospace*, 431 F.3d at 627; *Industrial Wire Prods.*, 186 F.3d at 881.[5]

## A. Applicability of the Agreement to Local 447's Grievance.

Five Seasons contends the Agreement's expiration and Local 447's purported abandonment of its representation of Five Seasons' employees renders the arbitration provisions in the Agreement inapplicable. These arguments are addressed in turn.

■ The expiration of a collective bargaining agreement is not fatal to a grievance so long as the grievance "arose out" of the contract. *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 249–55, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *see Litton*, 501 U.S. at 203–08, 111 S.Ct. 2215; *Trinidad Corp. v. Nat'l Maritime Union, Dist. No. 4*, 81 F.3d 769, 772–73 (8th Cir.1996); *Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1353 (8th Cir.1995); *Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1403–04 (en banc) (8th Cir. 1986); *Garland Coal & Mining Co. v. United Mine Workers*, 778 F.2d 1297, 1300–03 & nn. 6–7 (8th Cir.1985). Here, there is little doubt Local 447's grievance "arose out" of the relationship the Agreement memorializes. Local 447 expressly claimed Five Seasons violated a specific provision of the Agreement in a grievance filed before the Agreement expired. *See Litton*, 501 U.S. at 203–08, 111 S.Ct. 2215; *Nolde Bros.*, 430 U.S. at 249–55, 97 S.Ct. 1067; *Trinidad Corp.*, 81 F.3d at 773 (highlighting as determinative "whether any of the facts and circumstances leading to the relevant grievances arose before termination"); *C.R.S.T.*, 795 F.2d at 1403

---

**5.** A limited, and inapplicable, exception exists where a court must consider the merits of a grievance to decide if it is actually arbitrable. *E.g., Litton*, 501 U.S. at 208–10, 111 S.Ct. 2215; *GKN Aerospace*, 431 F.3d at 627–28. This exception is designed to prevent parties from being "forced to arbitrate grievances that have no relationship whatsoever to the collective bargaining agreement," *GKN Aerospace*, 431 F.3d at 627, as well as to aid a court's determination of whether a dispute is actually arbitrable, *Litton*, 501 U.S. at 209–10, 111 S.Ct. 2215.

("[F]or a right to arbitration to exist the grievance must either involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect."). Consequently, the fact no collective bargaining agreement presently exists between the parties is of no material consequence to Local 447's claim.[6]

■ Citing no legal authority, Five Seasons argues that a union automatically loses the ability to compel arbitration of an accrued grievance if the union ceases representing its members after a collective bargaining agreement expires. As noted above, events transpiring after the accrual of a grievance, such as an agreement's expiration, do not usually affect a union's ability to arbitrate. *E.g., Litton*, 501 U.S. at 203–05, 111 S.Ct. 2215; *Nolde Bros.*, 430 U.S. at 244–47, 250–51, 255, 97 S.Ct. 1067. The issue here is slightly different: whether evidence suggesting members of a labor union have "deauthorized" their union dues checkoff results in the union's subsequent inability to arbitrate a grievance that accrued during the pendency of a labor contract between the employer and the union.[7]

Although factually dissimilar, the Court's treatment of a labor union's ability to arbitrate grievances after the expiration of a collective bargaining agreement in *Nolde Brothers, Inc. v. Local 358, Bakery & Confectionary Workers Union* is illuminating. In that case, a union sought to compel arbitration of a dispute which arose after a collective bargaining agreement expired. *Nolde Bros.*, 430 U.S. at 244–47, 97 S.Ct. 1067. The employer refused to arbitrate, arguing its obligation to arbitrate expired with the agreement. *Id.* at 247, 250, 97 S.Ct. 1067. Siding with the union, the Court ruled that terminating an employer's obligation to arbitrate at the end of a collective bargaining agreement would ultimately "preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination [and where] arbitration processes began but were not completed, during the contract's term." *Id.* at 251, 97 S.Ct. 1067; *see also id.* (citing *John Wiley & Sons, Inc. v. Livingston*, for the proposition that "a dispute over employees' rights to severance pay under an expired collective-bargaining agreement was arbitrable even though there was no longer any contract between

---

6. It therefore follows that the present lack of a collective bargaining agreement between Five Seasons and Local 447 is an immaterial fact. *See* Def.'s Statement of Undisputed Facts in Support of Its Partial Motion for Summary Judgment, at ¶ 18.

7. The Court notes Five Seasons' inability to continue participating in the Union Health and Welfare Trust Fund has no bearing on Local 447's purported "abandonment" of its members. Five Seasons was entitled to participate in the Trust Fund under the terms of the Agreement. The fact that Five Seasons was no longer able to participate after the Agreement expired does not mean Local 447 "abandoned" representation of union members; it only means the Agreement expired.

The Court also recognizes that this is a different issue than that in *McDonald Part-*

ners, Inc. v. NLRB, where the court considered whether an employer violated the NLRA by refusing to bargain with a union after obtaining evidence that every employee who was a member of the union had deauthorized his or her union dues checkoff. *McDonald Partners, Inc. v. NLRB*, 331 F.3d 1002, 1005 (D.C.Cir.2003). The court held that the absence of any dues checkoffs could constitute objective evidence that the union lacked employee support. *Id.* at 1003, 1006–08. The issue here, of course, is not whether Local 447 enjoys the support of Five Seasons' employees; the issue is whether, assuming support is lacking, Local 447 is precluded from forcing Five Seasons to arbitrate a grievance arising under the Agreement.

the parties" (citing *John & Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 553, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (footnote omitted))).

Here, Local 447 filed its grievance when the Agreement was in full force, and thus during the time when Local 447 presumptively enjoyed the support of its members. *See NLRB v. Carmichael Constr. Co.,* 728 F.2d 1137, 1139 (8th Cir.1984) ("When an employer and a union enter into a collective bargaining agreement, an irrebuttable presumption of majority status is raised and continues for the duration of the contract."). And like the union in *Nolde Brothers,* Local 447 has continued to represent its members' interests by pursuing this action.

Stripping Local 447 of its contractual right to force Five Seasons to arbitrate is irreconcilable with courts' protection of a union's right to compel arbitration so long as the grievance arbitrated involves rights vesting or accruing before the agreement's expiration. *See Litton,* 501 U.S. at 208–09, 111 S.Ct. 2215; *Nolde Bros.* 430 U.S. at 250–51, 97 S.Ct. 1067; *see also Local 2 Int'l Bhd. of Electrical Workers v. Smith Commc'ns, Inc.,* 1991 WL 219427, at *4–*6 (W.D.Mo. Sept.5, 1991) (requiring a company to submit a grievance to a Labor Management Committee pursuant to the terms of a labor contract reached by the company's bargaining representative and a labor union, despite the company's attempt to terminate its agreement with its representative). Local 447 is not any more ineligible to represent past members at an arbitration proceeding now than it would have been had it attempted to arbitrate a grievance accruing after the Agreement's expiration. *Cf. Litton,* 501 U.S. at 194, 111 S.Ct. 2215 (uncertainty in union's certification status at the time of an agreement's expiration of limited consequence when considering whether the union could com-

pel arbitration of a grievance accruing post-expiration).

Cases from other jurisdictions addressing similar issues provide additional support. *See, e.g., Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Telex Computer Prods., Inc.,* 816 F.2d 519, 521–25 (10th Cir.1987) (holding that a union, even though it had been decertified by the NLRB, could force an employer to arbitrate a dispute under an expired labor contract, so long as the dispute arose from the contract); *Castaneda v. Dura–Vent Corp.,* 648 F.2d 612, 619 n. 2 (9th Cir.1981) (noting that a union's decision to delay consideration of a claim until the initiation of a deauthorization election held by the NLRB did not affect the validity of an arbitrator's award); *United States Gypsum Co. v. United Steelworkers,* 384 F.2d 38, 44–46 (5th Cir.1967) (rejecting the proposition that a labor union, "subsequent to its decertification, has no right to enforce [an] agreement or any of its provisions"); *Int'l Tel. & Tel. Corp. v. Local 400, Int'l Union of Elec., Radio & Mach. Workers,* 248 F.Supp. 949, 950–51 (D.N.J. 1965) (permitting arbitration proceedings "where decertification proceedings [were] pending but no final decertification order ha[d] been made," thus reducing the import of a question regarding the union's status as the employees' bargaining representative).

Accepting the undisputed fact that the grievance arose during the term of the Agreement and the representation of Local 447, and drawing from the long-standing judicial respect for contractually authorized arbitration proceedings and persuasive analogous legal reasoning, this Court finds that even accepting Five Seasons is correct in stating that Local 447 has abandoned representing Five Seasons' employees' interests in collective bargaining proceedings subsequent to the Agreement's expiration,[8] that fact is of

---

**8.** It therefore follows that whether Local 447

has actually abandoned its representation of

no consequence herein.[9] Five Seasons' contractual obligation to arbitrate remains.

## B. Scope of the Arbitration Clause.

■ As noted above, after finding the existence of an enforceable collective bargaining agreement equipped with an arbitration clause, the analysis turns to "whether the present 'dispute falls within the scope of the arbitration agreement.'" *Indus. Wire Prods.*, 186 F.3d at 881 (quoting *Keymer*, 169 F.3d at 504); *accord Marathon Ashland Petroleum*, 300 F.3d at 949; *Titan Tire*, 204 F.3d at 860. In light of the strong presumption of arbitrability that arises upon locating an arbitration clause, "'[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415 (quoting *Warrior & Gulf*, 363 U.S. at 582–84, 80 S.Ct. 1347) (first alteration in the original); *accord GKN Aerospace*, 431 F.3d at 627; *Duluth Clinic*, 413 F.3d at 788; *Local 589, Int'l Ladies' Garment Workers' Union v. Kellwood Co.*, 592 F.2d 1008, 1012 (8th Cir. 1979).

First, the Court must determine the breadth of the Agreement's arbitration clause. *See Duluth Clinic*, 413 F.3d at 788–89; *Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.*, 179 F.3d 1095, 1100 (8th Cir.1999). Our circuit distinguishes between "broad" and "narrow" arbitration clauses. Analyzing the language used reveals the clause's scope. For example, in *Fleet Tire Service of North Little Rock v. Oliver Rubber Co.*, our circuit found that a clause relegating "[a]ny controversy or claim arising out of or relating to [the] Agreement" to arbitration was broad. *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 620–21 (8th Cir.1997) (quotation marks omitted). Contrarily, in *United Steelworkers v. Duluth Clinic, Ltd.*, the court determined that a clause restricting arbitration to disputes over "any claim ... alleging a violation of a specific contract provision or adherence to the terms and provisions of [the] Agreement" was narrow. *Duluth Clinic*, 413 F.3d at 789–90 (quotation marks omitted). Similarly, in *Lebanon Chemical Corp. v. United Farmers Plant Food, Inc.*, the court ruled that a clause restricting arbitration to disputes "arising from a contract started or concluded under [certain r]ules" was narrow. *Lebanon Chem.*, 179 F.3d at 1100, 1101 (quotation marks omitted). Of particular importance to the *Lebanon Chemical* court was the absence of language requiring arbitration of disputes "relating to" the contract. *Id.* at 1101.

■ The Agreement here provides that "*any dispute* between the Employer and the Union ... concerning the effect, interpretation, application, claim of breach or violation of this Agreement, or *any other dispute* which may arise during the term of this Agreement" is subject to arbitration. Agreement art. XXII, § 1 (emphas-

---

the members it once represented is not a material fact. *See* Def.'s Statement of Undisputed Facts in Support of Its Partial Motion for Summary Judgment, at ¶¶ 14–17, 21.

9. Five Seasons cites *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), and *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), for the proposition that a union must

adequately represent all members of a bargaining unit. Although these cases stand for that proposition, they do not support Five Seasons' argument that if a union does not represent its members after the expiration of a collective bargaining agreement, it is prevented from forcing arbitration proceedings spawning from a grievance filed during the life of the contract.

es added). Unlike the arbitration clause in *Duluth Clinic*, the Agreement does not require the parties to identify a specific contract provision that has been violated. *See Duluth Clinic*, 413 F.3d at 789 (concluding a clause requiring a grievance to "specifically list[ ] the article(s) of the Agreement that were allegedly violated" limited what an arbitrator could consider, thus narrowing the arbitration clause (quotation marks omitted)). But also absent is language like that in *Fleet Tire*, where language sweeping disputes "relating to" the agreement within the arbitration clause was present. *See Fleet Tire*. 118 F.3d at 620–21. Nevertheless, the Agreement requires arbitration of not only disputes about a suspected breach of the Agreement, but also "any other dispute" arising during the life of the contract. These disputes apparently need not necessarily be grounded in the Agreement itself. *See Duluth Clinic*, 413 F.3d at 790 (limiting grievances to "violations of the [agreement] itself" makes a clause narrow). If the parties wished to restrict arbitrable matters to only those involving breaches of the Agreement itself, *e.g.*, *Duluth Clinic*, 413 F.3d at 789, or violations of specific rules, *e.g.*, *Lebanon Chem.*, 179 F.3d at 1100–01, they could have done so. Local 447 and Five Seasons did not.[10] The Agreement's arbitration clause is therefore broad.

With the presence of a broad arbitration clause, the Court must analyze whether the claim relates to the subject matter of the agreement. *Duluth Clinic*, 413 F.3d at 789; *Fleet Tire*, 118 F.3d at 621.[11] If the dispute does relate to the subject matter of the agreement, the Court must "leave[ ] for the arbitrator the issue of whether the controversy in question relates to the agreement containing the arbitration clause, *i.e.*, the scope of the clause." *Lebanon Chem.*, 179 F.3d at 1101; *see Fleet Tire*, 118 F.3d at 621 ("Where a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration."). In its February 19, 2003, letter, Local 447 wrote that it "believe[d Five Seasons] ha[d] breached the Collective Bargaining Agreement." Such a grievance clearly relates to the subject matter of the agreement. Consequently, the Court must relegate the dispute embodied in Local 447's grievance to arbitration.

Because resolving the cross-motions for summary judgment on Local 447's claim is solely dependent on whether Local 447's grievance is subject to arbitration, this ends the analysis. Considering the merits of Local 447's grievance would be inappropriate. *AT & T Techs.*, 475 U.S. at 649–50, 106 S.Ct. 1415; *GKN Aerospace*, 431 F.3d at 627; *Industrial Wire Prods.*, 186 F.3d at 881.[12] Considering whether Local

---

**10.** Although arbitrators here may be restricted "to decid[ing] only the issue submitted [by the parties] as regards the interpretation of th[e] Agreement," Agreement art. XXII, § 4, thereby appearing to mirror the narrow clause in *Duluth Clinic*, the arbitrators selected under the Agreement are not restricted "to making an award relating to the interpretation of or adherence to the written provisions of the Agreement," as was the case there, *Duluth Clinic*, 413 F.3d at 789 (quotation marks omitted).

**11.** If the Court concluded the clause here was narrow, the Court would consider "whether the dispute involves an agreement collateral

to the agreement containing the arbitration clause." *Fleet Tire*, 118 F.3d at 621; *accord Duluth Clinic*, 413 F.3d at 789. Because Local 447's grievance arose directly from a claimed breach of the Agreement, the Court would still find the grievance arbitrable, even if the arbitration clause the Agreement contains happened to be narrow.

**12.** This conclusion renders irrelevant Five Seasons' discussion regarding other courts' application of the Agreement's terms to Feaker Painting. *See* Def.'s Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment, at ¶¶ 5–8. Assessing

447 has met the procedural requirements contained in the Agreement, *see Howsam,* 537 U.S. at 84, 123 S.Ct. 588; *Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers v. EFCO Corp. & Constr. Prods., Inc.,* 359 F.3d 954, 956–57 (8th Cir.2004); *United Rubber, Cork, Linoleum, & Plastic Workers v. Pirelli Armstrong Tire Corp.,* 104 F.3d 181, 183–84 (8th Cir.1997), such as whether the grievance is time-barred by the Agreement itself, *see Automotive, Petroleum & Allied Indus. Employees Union v. Town & Country Ford, Inc.,* 709 F.2d 509, 510, 512–14 (8th Cir.1983), would also be inappropriate.[13]

Local 447's Motion for Summary Judgment must be **granted** with respect to the claim in its Complaint; Five Seasons' Motion for Partial Summary Judgment must be **denied** in its entirety. Local 447's grievance must be arbitrated.

### III. Five Seasons' Counterclaims.

#### A. Five Seasons' First Counterclaim.

In its first counterclaim, Five Seasons claims Local 447 failed to refer qualified applicants for employment and failed to provide appropriate apprentice training as the Agreement requires. Local 447 argues Five Seasons' claim should be treated as a grievance and subjected to the Agreement's compulsory arbitration procedures. Five Seasons responds by arguing that the grievance procedures set forth in the Agreement are not applicable to this claim because that procedure is applicable only to employee-initiated disputes.

As above, a two-step procedure guides the analysis of whether a dispute is subject to the Agreement's arbitration clause. First, the Court must determine whether a valid agreement to arbitrate exists; second, the Court must decide if the dispute fits within the scope of that agreement. *See Duluth Clinic,* 413 F.3d at 788; *Marathon Ashland Petroleum,* 300 F.3d at 949; *Titan Tire,* 204 F.3d at 860; *Indus. Wire Prods.,* 186 F.3d at 881. As before, the Court must ignore the merits of Five Seasons' complaint.[14] *See AT & T Techs.,* 475 U.S. at 649–50, 106 S.Ct. 1415; *GKN Aerospace,* 431 F.3d at 627; *Indus. Wire,* 186 F.3d at 881.

As noted above, "any dispute *between [Five Seasons] and [Local 447]* ... concerning the effect, interpretation, application, *claim of breach or violation of [the] Agreement,* or any other dispute which may arise during the term of [the] Agreement" qualifies as a grievance. Agreement art. XXII, § 1 (emphases

the validity of that argument would stray into territory reserved for the arbitrator.

**13.** Because the Court cannot consider whether the parties complied with the Agreement's procedural requirements, the Court cannot consider Five Seasons' argument that the parties did not agree to extend the time constraints contained in the Agreement. Whether Local 447's grievance was placed "on hold," as Local 447 argues, is a matter for the arbitrator. *United Rubber, Cork, Linoleum & Plastic Workers v. Pirelli Armstrong Tire Corp.* is distinguishable because Five Seasons does not argue Local 447's claim is barred by the NLRA's six-month statute of limitations. *See United Rubber, Cork, Linoleum & Plastic Workers of Am. v. Pirelli Armstrong Tire Corp.,* 104 F.3d 181, 182–85 (8th Cir.1997) (holding that grievances bearing a notation that they were on "hold" operated to toll the statute of limitations for those grievances, but noting the district court's careful avoidance of issues reserved for the arbitrator by not deciding whether the grievances were untimely under the collective bargaining agreement).

**14.** It follows that the Court must ignore Local 447's claim that Five Seasons should bring its claim against the Cedar Rapids Joint Apprenticeship Committee instead of Local 447 because the Committee is responsible for providing and training drywall tapers and finishers. Who bears the burden of providing and training tapers and finishers is a matter reserved for arbitration.

added). In its first counterclaim, Five Seasons claims practices of Local 447 breached the Agreement. Five Seasons' first counterclaim therefore embodies a dispute between the parties about a "breach or violation of th[e] Agreement." *Id.* Consequently, this dispute qualifies as a grievance.

■ The analysis then turns to whether Five Seasons' grievance must be arbitrated. Because the Agreement contains an arbitration clause, "there arises a presumption that the parties agreed to submit the dispute to arbitration unless there is clear intent 'that the parties did not want to arbitrate a related matter.'" *Indus. Wire Prods.*, 186 F.3d at 881 (quoting *Kaplan*, 514 U.S. at 945, 115 S.Ct. 1920). It is therefore necessary for the Court to conclude " 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute' " before refusing to issue an order to arbitrate. *GKN Aerospace*, 431 F.3d at 627 (quoting *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. 1347); *accord AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415; *Duluth Clinic*, 413 F.3d at 788.

■ The Agreement declares that the grievance procedures it contains are "exclusive and shall be followed by the employees and Union in the case of grievances." Agreement art. XXII, § 2. If, at the conclusion of those steps, the "grievance is not satisfactorily settled ... the grievance may be submitted to arbitration by the Union." *Id.* art. XXII, § 3. Facially, these terms do not appear to apply to disputes raised in the first instance by Five Seasons, and instead would appear to apply only to employee– or union–initiated grievances. Elsewhere, however, the Agreement implicitly permits such a practice. A different section in the same Article of the Agreement provides as follows:

> There shall be no strike or lockout on any job over any grievance or dispute while it is being processed through this grievance procedure and until said grievance procedure has been exhausted. However, and not withstanding [sic] any contrary provision of the agreement, the union may remove employees from any job(s) of an individual employer who fails or refuses to pay the wages or fringe benefits, or to meet the schedule of hours provided for and required by this agreement, or refuses to stand trial under these procedures, or fails to comply with a final and binding decision issued at any level of this grievance procedure. Nothing stated in this Section shall *preclude the employer from resorting to the grievance procedure with respect to any action or sanction taken or imposed by the union hereunder.*

*Id.* art. XXII, § 10 (emphasis added). If the quoted clause does not *preclude* Five Seasons from resorting to the grievance procedure (which culminates in arbitration), then Five Seasons must otherwise have the ability to initiate grievances. It is a logical truism that Five Seasons cannot be "preclude[d]" from doing something it cannot otherwise do. It therefore follows that grievances initiated by Five Seasons could be encompassed within the Agreement's arbitration clauses.[15]

---

15. The fact that Five Seasons is not precluded by "this Section" does not mean Article 22, section 10 both creates and limits Five Seasons' ability to submit a grievance to arbitration. *See* Agreement art. XXII, § 10. Just six sections prior, the Agreement declares that an "arbitrator acting under this Section shall not have" certain powers. *See id.* art. XXII, § 4. Section 4 contains no actions an arbitrator may (or may not) take; that language is in other sections of the same Article. *See, e.g., id.* art. XXII, § 8. Consequently, the use of the word "Section" does not appear to apply only to one particular section of the Agreement, but instead appears to encompass at least the Article in which a particular section appears.

For Five Seasons' grievance to fall outside the scope of the Agreement's arbitration clause, the clause must not be susceptible of an interpretation covering the dispute. *AT & T Techs.*, 475 U.S. at 650, 106 S.Ct. 1415; *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. 1347; *GKN Aerospace,* 431 F.3d at 627; *Duluth Clinic,* 413 F.3d at 788. As shown, it is. It therefore follows that Local 447's Motion for Summary Judgment must be **granted** with respect to Five Seasons' first counterclaim. To the extent Five Seasons has initiated a grievance against Local 447, it should proceed before an arbitrator.[16]

## B. Five Seasons' Second Counterclaim.

In its second counterclaim, Five Seasons sets forth a negligent misrepresentation claim. More specifically, Five Seasons contends that in March 2003, Local 447 indicated it would provide qualified drywall tapers and finishers to Five Seasons, would provide training for drywall tapers and finishers who were employees of Five Seasons, and would adjust fringe benefit costs for drywall tapers and finishers as a part of a new collective bargaining agreement. Five Seasons contends Local 447 intended these representations to influence Five Seasons to extend the time frame for arbitrating Local 447's grievance. Local 447 argues Five Seasons' claim is barred by the doctrine of complete preemption. Alternatively, Local 447 contends the record does not reveal the existence of a fact question with respect to the elements of Five Seasons' second counterclaim.

## 1. Application of the Doctrine of Complete Preemption to Five Seasons' Second Counterclaim.

■ The complete preemption doctrine operates to prevent a state law claim if its resolution depends upon an interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403–06 & nn. 3–5, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); *see Finney v. GDX Auto.,* 135 Fed.Appx. 888, 889 (8th Cir.2005); *St. John v. Int'l Ass'n of Machinists & Aerospace Workers,* 139 F.3d 1214, 1217 (8th Cir.1998); *Hanks v. Gen. Motors Corp.,* 859 F.2d 67, 68–70 (8th Cir. 1988); *Anderson v. Ford Motor Co.,* 803 F.2d 953, 955–56 (8th Cir.1986) (2–1 decision). Applying federal law in such situations is preferred to preserve nationwide uniformity in the interpretation of collective bargaining agreements. *See Lingle,* 486 U.S. at 404 n. 3, 406, 108 S.Ct. 1877; *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Williams v. George P. Reintjes Co.,* 361 F.3d 1073, 1074–75 (8th Cir.2004); *Vacca v. Viacom Broad. of Mo., Inc.,* 875 F.2d 1337, 1341–42 (8th Cir.1989).

■ Section 301 of the LMRA provides that

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in

---

**16.** Local 447's assertion that Five Seasons' first counterclaim is barred by the statute of limitations is without record support. The record does not contain evidence suggesting when this counterclaim accrued. As the party moving for summary judgment on this counterclaim, the burden of showing the absence of material facts falls upon Local 447. *See* Fed.R.Civ.P. 56(c), (e); *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (hereinafter "section 301"). Although at first impression appearing to do little more than confer jurisdiction on federal courts to hear disputes about collective bargaining agreements, the Supreme Court has interpreted section 301 to allow federal courts to create a body of law to enforce collective bargaining agreements as informed by "the policy of our national labor laws." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 450–57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *accord Livadas v. Bradshaw,* 512 U.S. 107, 121–22, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (collecting cases); *Allis–Chalmers,* 471 U.S. at 209–10, 105 S.Ct. 1904; *Bowen v. United States Postal Serv.,* 459 U.S. 212, 224–25, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983); *Vacca,* 875 F.2d at 1341–42. Section 301 prevents plaintiffs from disguising a claim alleging a breach of a collective bargaining agreement or another cause of action requiring an interpretation of a labor contract as an action grounded in state law. *See Livadas,* 512 U.S. at 123, 114 S.Ct. 2068; *Int'l Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 856–59, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *Lucas Flour,* 369 U.S. at 103–04, 82 S.Ct. 571; *Allis–Chalmers,* 471 U.S. at 211, 219–20, 105 S.Ct. 1904, ; *Vacca,* 875 F.2d at 1341–42.[17]

Section 301 extinguishes claims if " '[t]he heart of the [state-law] complaint [is] a . . . clause in [a] collective bargaining agreement.' " *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Avco Corp. v. Machinists,* 390 U.S. 557, 558, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)) (first through third alterations and omission in original; cita-

tion omitted); *Allis–Chalmers,* 471 U.S. at 209–10, 105 S.Ct. 1904 ("A state rule that purports to define the meaning or scope of a term . . . is pre-empted by federal labor law."); *Vacca,* 875 F.2d at 1342. However, to be stifled by section 301, the claim must be "founded *directly* on rights created by collective-bargaining agreement" or be " 'substantially dependent on analysis of a collective-bargaining agreement.' " *Caterpillar,* 482 U.S. at 394, 107 S.Ct. 2425 (quoting *Hechler,* 481 U.S. at 859 n. 3, 107 S.Ct. 2161) (emphasis added); *accord Williams,* 361 F.3d at 1074–75; *Oberkramer v. IBEW–NECA Serv. Ctr., Inc.,* 151 F.3d 752, 756 (8th Cir.1998); *see also Lingle,* 486 U.S. at 410, 108 S.Ct. 1877 (holding that if "the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes"); *Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. 1904 ("hold[ing] that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," section 301 preemption applies). For example, if a plaintiff claims harm resulted from the violation of an obligation which would not have otherwise existed but for the collective bargaining agreement, *see Hechler,* 481 U.S. at 859–62, 107 S.Ct. 2161, or if the duty the plaintiff claims was breached is derived from and is defined in the agreement, *see Allis–Chalmers,* 471 U.S. at 217–18, 105 S.Ct. 1904, preemption is required. The most obvious case occurs where a plaintiff brings a breach of contract action and the contract breached is the labor contract itself. *See, e.g., Oberkramer,* 151 F.3d at 756.

---

**17.** Contrary to Local 447's contention that dismissal is required upon a finding of preemption, claims preempted by section 301 "must either be treated as a section 301 claim *or* dismissed as preempted by federal labor contract law." *Hanks,* 859 F.2d at 68 (citing

*Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. 1904); *accord Oberkramer v. IBEW–NECA Serv. Ctr., Inc.,* 151 F.3d 752, 756 (8th Cir. 1998). In some cases the result is the same. *E.g., Allis–Chalmers,* 471 U.S. at 220–21, 105 S.Ct. 1904.

■ Preemption is also appropriate if a state law claim "is inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904; *accord St. John*, 139 F.3d at 1217; *Vacca*, 875 F.2d at 1342. For example, interpretation of a collective bargaining agreement can be inextricably intertwined with a state law claim if the conduct the plaintiff claims amounts to a tort is arguably required by the agreement or if the duty allegedly breached in a negligence action is contained in the agreement's terms. *E.g., Gore v. Trans World Airlines*, 210 F.3d 944, 949–52 (8th Cir. 2000) (studying preemption under the Railway Labor Act, a task " 'virtually identical' " to analyzing preemption under the LMRA (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994))).

■ Still, though, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. 1904; *see also Livadas*, 512 U.S. at 123–24 & n. 17, 114 S.Ct. 2068. So-called "independent" state law claims—those that do not require construing the agreement—are not preempted. *See Lingle*, 486 U.S. at 407, 108 S.Ct. 1877; *St. John*, 139 F.3d at 1217; *see also Lingle*, 486 U.S. at 408–10, 108 S.Ct. 1877 (holding that even if facts animating the analysis of a state law claim overlap with those guiding an interpretation of a labor contact, that reality does not necessarily preempt a state law claim). The existence of nonnegotiable rights employees possess under state law, claims independent of the collective bargaining agreement, *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. 1904, and claims requiring

the mere consultation of the collective bargaining agreement, *Livadas*, 512 U.S. at 122–23 & n. 17, 114 S.Ct. 2068 (discussing *Lingle*, 486 U.S. at 413 n. 12, 108 S.Ct. 1877), do not restrain a state claim in section 301's judicially-created lunette. Additionally, if factual questions about the conduct and motives of an employee or employer drive the analysis, preemption is not required. *Lingle*, 486 U.S. at 407, 108 S.Ct. 1877.

■ Five Seasons' second counterclaim is centered on allegations that Local 447 represented it would agree to the inclusion of certain clauses in a *new* collective bargaining agreement in exchange for an extension of the time frame for Local 447 to arbitrate a grievance arising under the *old* collective bargaining agreement. According to Five Seasons, Local 447's conduct constituted the tort of negligent misrepresentation. The tort of negligent misrepresentation under Iowa law requires proof of each of the following elements:

(1) the statements were made in the course of the maker's business; (2) the statements relied upon were false when made; (3) the statements were made for the guidance of others in their business transactions; (4) the maker was negligent; (5) the statements were made for the benefit of the persons harmed; (6) the maker intended the information to influence the recipient in a specified or similar transaction; (7) the recipient's reliance was reasonable or justified.

*Burns Philp Inc. v. Cox, Kliewer & Co.*, No. 4–99–CV–90033, 2000 WL 33361992, at *11 (S.D.Iowa 2000) (citing *Bradshaw v. Wakonda Club*, 476 N.W.2d 743, 746–47 (Iowa Ct.App.1991)); *accord Conveyor Co. v. Sunsource Tech. Servs., Inc.*, 398 F.Supp.2d 992, 1013 (N.D.Iowa 2005).[18]

---

18. These elements have been divined from the Restatement (Second) of Torts, which provides as follows, in pertinent part,

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary

The Agreement permits extending the time limits applicable to grievances "by written mutual agreement between" the parties. Agreement art. XXII, § 9. Five Seasons claims Local 447 induced it to concede to such an extension in reliance upon representations Local 447 knew were false. Neither party claims Five Seasons refused to agree to an extension in accordance with the Agreement; the dispute is over whether Local 447 intended to return the favor by conceding to the inclusion of certain terms in a new contract.

This dispute does not depend upon an interpretation of any term in the Agreement; instead it depends on the truth of representations made by one party to another as part of negotiations undertaken in a failed attempt to draft a new contract. *Cf. Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356, 359 (8th Cir.1996) (concluding a plaintiff's state law defamation claim was not preempted because "the central inquiry—what was said to whom, whether it was false and knowingly or recklessly so, and whether damages resulted" did not require an interpretation of the labor contract). The motives of members of Local 447 when making statements that referred to the content of a new labor contract have nothing to do with the terms in an old contract. As a result, instead of an interpretation of the terms of the Agreement, factual questions about the conduct and motives of Local 447's representatives drive the analysis. *See Lingle*, 486 U.S. at 407, 108 S.Ct. 1877. Consequently, Five Seasons' negligent misrepresentation claim depends in no way upon the Agreement. Therefore, preemption is not required;

interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Five Seasons' second counterclaim need neither be arbitrated nor couched as a section 301 action.

### 2. The Merits of Five Seasons' Second Counterclaim.

Local 447 argues that even if Five Seasons' second counterclaim is not preempted, Five Seasons "cannot meet its burden to prove that [Local 447] concocted a scheme by which it would promise to develop a new agreement in which [Local 447] would provide, train, and adjust benefits for drywall tapers and finishers exclusively as part of a plan to process the grievance currently before the [C]ourt." As the party resisting summary judgment on this claim, Five Seasons must "by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 56(e)).

To support its negligent misrepresentation claim, Five Seasons relies exclusively upon an affidavit submitted by Feaker. Feaker contends "Guyer represented ... that if Five Seasons agreed to the extension of time regarding the grievance so that the parties could finish negotiations, the new collective bargaining agreement would include" certain terms. Feaker Aff. ¶ 14. Feaker claims to have relied on those statements when he authorized Five Seasons' attorney to agree to an extension of time regarding Local 447's grievance. *Id.* ¶ 15.

Restatement (Second) of Torts § 552(1) (1977) (quoted in *Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 924 (Iowa 1994)); *see also Ryan v. Kanne*, 170 N.W.2d 395, 402 (Iowa 1969) (quoting a predecessor draft of the same section).

Even viewing Feaker's statements in a light most favorable to Five Seasons, as required, *see Matsushita,* 475 U.S. at 587–88, 106 S.Ct. 1348, Five Seasons has still failed to generate a fact question with respect to many elements of its negligent misrepresentation claim. For example, nowhere in the record (other than the Answer, which is insufficient, *see* Fed. R.Civ.P. 56(e)) is there support for the proposition that Guyer made a representation in a negligent way, *see Burns Philp,* 2000 WL 33361992, at *11 (requiring proof that "the maker was negligent"), or that he made false statements with knowledge they were false, *see Burns Philp,* 2000 WL 33361992, at *11 (requiring proof that "the statements relied upon were false when made").

In the absence of a genuine issue of material fact on these elements, Local 447 is entitled to summary judgment with respect to Five Seasons' second counterclaim. *See Burns Philp,* 2000 WL 33361992, at *11.

### CONCLUSION

Local 447's Motion for Summary Judgment (Clerk's No. 10) must be **granted.** Five Seasons' Motion for Partial Summary Judgment (Clerk's No. 11) must be **denied.** Local 447's grievance, as well as the dispute contained in Five Seasons' first counterclaim must be arbitrated. Five Seasons' second counterclaim must be dismissed.

**IT IS SO ORDERED.**